IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01167-CMA

LENNIE D. MOSES,

      Applicant,

v.

MIKE ROMERO, *Warden of the Fremont Correctional Facility*, and
PHIL WEISER, *Attorney General for the State of Colorado*,

      Respondents.

---

## ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

Applicant Lennie D. Moses is a prisoner in the custody of the Colorado

Department of Corrections. Through counsel, Applicant filed a First Amended Verified

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the

"Application") on April 21, 2019. (Doc. # 2.) The Application asserts eleven claims for

relief, challenging the validity of Applicant's convictions in Arapahoe County District

Court case number 03CR3359—a case charging him with various crimes related to

four "purse snatchings" in October of 2003. (*Id.* at 7-10.) Respondents filed an Answer

on October 15, 2019. (Doc. # 24.) Despite being granted five extensions of time,

Applicant has not filed a reply to the Answer. (*See* Doc. # 25, 27, 29, 31, 33, and 34.)

Because the deadline for Applicant to file a reply expired on March 12, 2020, and

Applicant has not communicated with the Court in any manner since February 12,

2020, the Court will proceed to address the merits of the Application. For the reasons

1

below, the Court denies the Application and dismisses this case with prejudice.

## I.    BACKGROUND

The Colorado Court of Appeals, in addressing Applicant's combined direct

appeal and postconviction appeal, recounted the case background as follows:

> This case has an unusual procedural history. We recount that history to the extent necessary to provide context for the issues on appeal.
>
> Moses was arrested and charged in connection with four purse snatchings that occurred in Aurora in October of 2003: the first near a Safeway on October 19, the second in the parking lot of Costco on October 27, and the third and fourth on October 31, near a doctor's office and a King Soopers, respectively. In all four robberies, the perpetrator grabbed the victim's purse, then ran back to his vehicle and drove away. In two of the robberies, the victims chased the perpetrator back to his vehicle in an attempt to retrieve their stolen purses, and then sustained injuries when they were thrown off the accelerating vehicle.
>
> Moses was traced to the crimes because vehicles that matched those used in the purse snatchings — a small, tan pickup and a maroon car — were registered to Moses's wife.
>
> Moses was charged with two counts of aggravated robbery, two counts of robbery, one count of first degree assault, one count of second degree assault, and two counts of theft from an at-risk adult. His first trial ended in a mistrial, after a juror claimed to know Moses's alternate suspect, 'Spook.' After a second trial, the jury convicted Moses of all charges.
>
> Moses appealed, but most of his claims could not be reviewed because his appellate counsel failed to provide the record of the trial court proceedings. A division of this court affirmed Moses's judgment of conviction. *See People v. Moses*, (Colo. App. No. 06CA1558, Nov. 20, 2008) (not published pursuant to C.A.R. 35(f)).
>
> Moses then sought postconviction relief. His first postconviction counsel failed to timely file a Crim. P. 35 motion, so Moses filed a pro se Rule 35(c) motion that was later supplemented by second postconviction counsel.
>
> After a hearing, the postconviction court rejected Moses's claims of ineffective assistance of trial counsel. However, the court found that appellate counsel was ineffective and, as a remedy, it granted Moses this

second appeal.

Moses now raises seven claims of error related to his second trial: (1) the court improperly denied his motions to suppress a witness's identification and statements Moses made during a pre-arrest interview; (2) the evidence was insufficient to support his convictions; (3) the court improperly denied his *Batson* challenge; (4) the court erred in allowing a detective to answer two juror questions; (5) the court abused its discretion when it refused to qualify his expert on cross racial eyewitness identification; (6) the court erred in denying Moses's instruction on eyewitness identification; and (7) the court erred in failing to declare a mistrial when Moses failed to appear on the final day of trial.

He also challenges the postconviction court's denial of three of his claims of ineffective assistance of trial counsel. Those claims alleged that counsel was ineffective in (1) failing to call the juror who purportedly knew 'Spook,' the alternate suspect; (2) failing to diligently investigate the qualifications of the endorsed eyewitness identification expert; and (3) waiving closing argument.

(Doc. # 9-4 at 2-4.) Ultimately, the Colorado Court of Appeals affirmed Applicant's convictions and the trial court's denial of postconviction relief. (*Id.* at 42.) The Colorado Supreme Court denied certiorari. (Doc. # 9-5.) Accordingly, the decision by the Colorado Court of Appeals (Doc. # 9-4) is the last state court to decide Applicant's claims on the merits, making it the operative order for federal habeas review. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

In this federal habeas action, Applicant raises eleven claims for relief—ten of which remain.[1] (Doc. # 2, 19.) As discussed below, Respondents counter each of the ten claims for habeas relief, contending that each should be denied and the Application dismissed with prejudice. (Doc. # 24.) The Court will provide the standard for federal habeas review followed by a discussion of Applicant's ten remaining claims.

---

[1] On August 26, 2019, the Court dismissed claim five as procedurally defaulted. (Doc. # 19.)

## II.     STANDARD OF REVIEW

"The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson*, 138 S. Ct. at 1191 (2018) (citing 28 U.S.C. § 2254(d)). Each of Applicant's ten remaining claims was "adjudicated on the merits in State court." It is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* Applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

## III.    DISCUSSION

### A.  Claim One: Out-of-Court Identification.

Applicant first claims that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the "trial court improperly denied [his] motions to suppress a witness's out of court identification." (Doc. # 2 at 7.) At trial, Applicant defended against the criminal charges by arguing that he had been mistakenly identified as the purse snatcher. (*Id.* at 5.) Here, Applicant alleges that "[o]ne of the victims interviewed by police, Ms. Diaz, identified the assailant as having a 'crater face', or acne scars. Based in part on that description, police put together a photo array that included six

4

individuals. Only one photo of an individual with what could be reasonably described as a crater face, which was that of Mr. Moses, was included. When confronted with the array, Ms. Diaz predictably chose Mr. Moses as the assailant." (*Id.* at 5.) Applicant concludes the photo array was unduly suggestive and, as a result, the out-of-court identification should not have been admitted as evidence. (*Id.*)

Respondents counter that the Colorado Court of Appeal's "application of the relevant Supreme Court case law was not unreasonable because it followed an approach taken by federal appellate courts in determining whether photo arrays are impermissibly suggestive – that is, considering whether the suspects in the photos generally appear similar in terms of age, race, facial hair, and other factors." (Doc. # 24 at 11-18.)

A challenge to the constitutionality of a pre-trial identification procedure requires a two-step analysis. First, the court determines whether the identification procedure was impermissibly suggestive. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). Second, if the identification was impermissibly suggestive, the court must further determine whether, under the totality of the circumstances, the suggestive procedure created a "substantial likelihood of misidentification" or was reliable. *Biggers*, 409 U.S. at 201. "[T]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). "[R]eliability is the linchpin in determining the admissibility of identification testimony. *Id.* at 114.

The state appellate court did not apply law that was contrary to clearly established United States Supreme Court authority. (Doc. # 9-4 at 11-16.) In discussing the applicable legal standard, the Colorado Court of Appeals cited *Bernal v. People*, 44 P.3d 184, 191 (Colo. 2002)—a Colorado Supreme Court decision that recounts the United States Supreme Court's line of cases resulting in the two-step analysis for determining whether a police-arranged identification procedure satisfies due process. *Bernal*, 44 P.3d at 191 (citing *Simmons v. United States*, 390 U.S. 377 (1968), *Neil v. Biggers*, 409 U.S. 188 (1972); *Manson v. Brathwaite*, 432 U.S. 98 (1977).

Nor did the state appellate court unreasonably apply the governing precedent. It found the photo lineup was not "unduly suggestive" because "all of the individuals were African-American men 'of approximately the same darkness of complexion,' all of the individuals had short hair, and three of the people in the array were wearing very similar shirts." (Doc. # 9-4 at 15.) As to whether Applicant's acne scars rendered the photo lineup unduly suggestive, the court reasoned: "While we believe that Moses's photo shows more scarring or discoloration of the skin than the photos of the other individuals, that difference alone does not render the photo array unduly suggestive, particularly where the importance of the acne scars in the overall description is unknown." (*Id.* at 16.) Applicant does not establish that a balancing of these facts requires a contrary outcome. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

6

comprehended in existing law beyond any possibility for fairminded disagreement.").

Therefore, habeas relief is not warranted on this claim.

### B. Claim Two: Admission of Applicant's Statements to Police.

Applicant's second claim challenges the validity of his *Miranda* waiver. After

connecting a car registered to Applicant's wife to the purse snatchings, officers from

the Aurora Police Department questioned Applicant. (Doc. # 2 at 5-6.) Applicant waived

his *Miranda* rights in writing, and after being "confronted by police with inconsistencies,

Mr. Moses broke down and stated: 'if you said I did it, I did it.'" (*Id.* at 6.) Applicant filed

"a pretrial motion to suppress[, arguing] that his statement to police was not volitional,

knowing, or intelligent due to the fact that police exacted pressure on him and because

he was laboring under the effects of crack cocaine." (*Id.*) The trial court denied the

motion and the appellate court affirmed. Respondents contend the Colorado Court of

Appeals "correctly identified the governing Supreme Court standard for a *Miranda*

waiver and reasonably applied it[.]" (Doc. # 24 at 19, 19-23.)

"The *Miranda* Court formulated a warning that must be given to suspects before

they can be subjected to custodial interrogation." *Berghuis v. Thompkins*, 560 U.S.

370, 380 (2010). Thus, "the accused's statement during a custodial interrogation is

inadmissible at trial unless the prosecution can establish that the accused in fact

knowingly and voluntarily waived [*Miranda*] rights when making the statement." *Id.* at

382 (quotations and citation omitted; bracket in original). "The waiver inquiry has two

distinct dimensions: waiver must be voluntary in the sense that it was the product of a

free and deliberate choice rather than intimidation, coercion, or deception, and made

7

with a full awareness of both the nature of the right being abandoned and the

consequences of the decision to abandon it." *Id.* at 382-83 (quotation marks and

citation omitted).

The Colorado Court of Appeals recited a nearly identical legal standard in

rejecting Applicant's claim that his waiver was not knowing and intelligent:

> If a defendant waives his rights and agrees to speak to police, the validity of the waiver depends on two elements: (1) whether the waiver was voluntary, meaning that it was free from governmental coercion; and (2) whether it was made knowingly and intelligently, with full awareness of the nature of the right and the consequences of its abandonment. *People v. Knedler*, 2014 CO 28, ¶ 10.

(Doc. # 9-4 at 8-9.)

Applicant does not cite any contradictory law or a materially indistinguishable

Supreme Court decision that would compel a different result. *House v. Hatch*, 527 F.3d

1010, 1016 (10th Cir. 2008) ("clearly established law consists of Supreme Court

holdings in cases where the facts are at least closely-related or similar to the case *sub*

*judice*."). Therefore, he fails to demonstrate the state court's determination with respect

to claim two is contrary to clearly established federal law under § 2254(d)(1).

Applicant also fails to demonstrate the state court's rejection of this claim is

based on an unreasonable determination of the facts in light of the evidence presented.

28 U.S.C. § 2254(d)(2). Under § 2254(e)(1) the Court presumes the state court's

factual determinations regarding the circumstances surrounding the *Miranda* waiver

are correct. This presumption of correctness applies to the state court's factual

determination which "credited the detective's unchallenged testimony that Moses did

not appear to be under the influence of any intoxicants at the time of the interview."

8

(Doc. # 9-4 at 9.) Likewise, the state court found the detective's statement that he intended to arrest Applicant for the purse snatchings did not constitute coercion. (*Id.* at 10.) Applicant's conclusory assertions that his *Miranda* waiver was not knowing and voluntary because he was under the influence of crack cocaine is not clear and convincing evidence to rebut the presumption of correctness under § 2254(e)(1). As a result, he fails to establish the state court's decision was based on an unreasonable determination of the facts.

Finally, Applicant fails to demonstrate the state court's decision is an unreasonable application of clearly established federal law under § 2254(d)(1). In light of the factual determinations surrounding the *Miranda* waiver, Applicant does not demonstrate the state court unreasonably concluded his constitutional rights were not violated. Therefore, Applicant is not entitled to habeas relief on claim two.

## C. Claim Three: Sufficiency of the Evidence.

Next, Applicant contends the "evidence was insufficient to support his convictions[.]" (Doc. # 2 at 8.) Like his misidentification theory at trial, Applicant presses the fact that three of the four victims of the purse snatchings were unable to identify him before trial. (*Id.* at 6-7, 8.) Applicant's only argument on this score is that there was insufficient evidence to find that *he* was the person who committed the crimes. Respondents maintain that the Colorado Court of Appeals correctly stated and applied the governing Supreme Court standard, meaning sufficient evidence was presented to support Applicant's convictions. (Doc. # 24 at 24-30.)

The proper standard for evaluating a claim challenging the sufficiency of the

evidence is found in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16). To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). "Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at 673. The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman*, 566 U.S. at 651. "First, on direct appeal, it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Id.* (internal quotation marks omitted). Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the

federal court disagrees with the state court. The federal court instead may do so only if

the state court decision was objectively unreasonable." *Id.* (internal quotation marks

omitted).

The Colorado Court of Appeals addressed the merits of Applicant's sufficiency-

of-the-evidence claim as follows:

> We review challenges to the sufficiency of the evidence de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). In conducting our review, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is both 'substantial and sufficient' to support the defendant's guilt beyond a reasonable doubt. *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). We give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence, even if the record also contains evidence to the contrary. *People v. Thornton*, 251 P.3d 1147, 1149 (Colo. App. 2010).
>
> The evidence, summarized in the light most favorable to the prosecution, established the following:
>
> *October 19, 2003 purse snatching at Safeway*
> • The victim described the robber as a black man.
>
> • The victim described the robber's vehicle as a small tan pickup truck with no license plate and a spare tire inside the bed.
>
> • A vehicle matching that description was driven by Moses, and the victim identified Moses's pickup truck as the vehicle involved in the robbery.
>
> • The victim's daughter initially 'had trouble' identifying the robber from the photo array, but she ultimately selected Moses's photo and told police that he 'appeared to be the person who robbed' her mother.
>
> • The victim's daughter identified Moses at trial as the person whose photo she had selected from the array.
>
> *October 27, 2003 purse snatching at Costco*
> • A witness to the purse snatching described the robber as a light-skinned black man, between the ages of twenty and thirty, and told police that the robber's car had a license plate with the letters 'H' and 'B.'

• The second witness, Diaz, provided a detailed physical description of the perpetrator that matched Moses, and she identified Moses, from the photo array and in court, as the robber.

### October 31, 2003 purse snatchings

• A witness to the first purse snatching saw a black man of medium build take the victim's purse then run to a faded red car with license plate number 208HBP.

• The victim of the second purse snatching reported that a black man stole her purse then ran back to a maroon car with license plate number 208HBP.

• The license plate belonged to a maroon Chrysler Sebring registered to Moses's wife.

• A credit card taken from the last victim was used shortly after the robbery at a gas station near Moses's house.

Moses's defense was that during October 2003, he regularly loaned his vehicles to people in exchange for crack cocaine — on October 31, he had loaned his car to someone named 'Spook' — and was not driving either of his vehicles at the time of the robberies.

To the extent there were inconsistencies among the witnesses' descriptions of the robber, 'these inconsistencies and [the witnesses'] explanation[s] of them were for the jury to consider in determining what weight, if any, to give to [their] trial testimony.' *People v. Brassfield*, 652 P.2d 588, 592 (Colo. 1982) (holding that the conflict between the witness's trial testimony and his earlier statements to police about the identity of the person with a gun did not render the evidence of identity insufficient). If there is sufficient competent evidence to establish the essential elements of a crime, a guilty verdict will not be overturned by an appellate court, even though there are conflicts and inconsistences in the evidence. *See, e.g.*, *Clark v. People*, 232 P.3d 1287, 1293 (Colo. 2010); *see also Schreiner v. People*, 146 Colo. 19, 22-23, 360 P.2d 443, 444-45 (1961) (stating that conflict in evidence regarding identity does not equate to insufficiency of the evidence).

The question is whether, on this evidence, a rational jury could find Moses guilty of the purse snatchings (and the assaults that resulted) beyond a reasonable doubt. *See People v. Randell*, 2012 COA 108, ¶ 31. The answer is yes. Viewed in the light most favorable to the government, the direct and circumstantial evidence was substantial and sufficient to support

the convictions. *See People v. Zaring*, 190 Colo. 370, 372, 547 P.2d 232, 233 (1976) ('[C]ircumstantial evidence alone may be sufficient to sustain a conviction.').

(Doc. # 9-4 at 16-20.)

Applicant does not identify a materially indistinguishable Supreme Court decision requiring a different result. *See House*, 527 F.3d at 1018. Thus, the state court's decision does not run afoul of § 2254(d)(1).

And under § 2254(e)(1), the Court presumes the state court's factual determinations are correct—Applicant bears the burden of rebutting the presumption by clear and convincing evidence. He presents no evidence to rebut the presumption and the Court's own review of the record confirms the state court's factual findings. (Doc. # 23, Trial Tr. (Apr. 17-21, 2005). Consequently, relief is not available under § 2254(d)(2).

Finally, despite the *weaknesses* that Applicant points to regarding the eyewitnesses' identifications of him, nothing suggests that the appellate court's resolution of this claim—given the evidence presented at trial, considered by the jury, and weighed in favor of the prosecution—was objectively unreasonable. Therefore, this claim does not provide a basis for habeas relief.

**D.  Claim Four: *Batson* Challenge.**

Applicant's fourth claim posits that during jury selection "the prosecutor struck from the venire the sole African-American individual in the pool" in violation of his Fifth and Fourteenth Amendment rights. (Doc. # 2 at 6, 8.) After defense counsel objected, the "district attorney did not offer a plausible race-neutral explanation for the peremptory challenge. The record completely belies the district attorney's justification,

13

which amounted to a contention that the juror was not 'articulate'." (*Id.* at 6.) Applicant

contends the offered "justification was baseless." (*Id.*) Respondents disagree. They

argue that the Colorado Court of Appeals reasonably applied *Batson*. (Doc. # 24 at 30-

35.)

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that

purposeful discrimination based on the race of a juror violates the Equal Protection

Clause of the Fourteenth Amendment. *Id.* at 84. *Batson* provides a three-step analysis

for determining whether a peremptory strike violates this rule: (1) the defendant must

present a *prima facie* case by showing facts supporting an inference of discriminatory

purpose; (2) if the defendant satisfies step one, the burden shifts to the government to

provide a race-neutral justification; and (3) if the government can do this, the court then

decides whether purposeful racial discrimination nonetheless occurred. *See Johnson v.

California*, 545 U.S. 162, 168 (2005).

"A [race-]neutral explanation . . . means an explanation based on something

other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991);

s*ee also Rice v. Collins*, 546 U.S. 333, 338 (2006) ("Although the prosecutor must

present a comprehensible reason, '[t]he second step of this process does not demand

an explanation that is persuasive, or even plausible'; so long as the reason is not

inherently discriminatory, it suffices.") (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68,

(1995) (per curiam)).

During the final step, a court evaluates "the persuasiveness of the justification"

proffered by the prosecutor. *Purkett*, 514 U.S. at 768. "[T]he disproportionate exclusion

of members of a certain race" may be considered "as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination." *Hernandez*, 500 U.S. at 363. A trial court's resolution of step three is entitled to great deference on appeal. *Id.* at 364-65. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768.

Here, the Colorado Court of Appeals applied the correct federal standard (Doc. # 9-4 at 21-22), and rejected Applicant's claim on the following grounds:

> On appeal, Moses contends that the prosecutor's proffered reasons for the strike are incredible because the juror responded appropriately to the prosecutor's questions and the juror's interaction with defense counsel was too limited to demonstrate a preference for the defense.
>
> During voir dire, the prosecutor asked the juror to explain the difference between proof beyond a reasonable doubt and proof beyond a shadow of a doubt. The juror responded: 'Beyond a shadow of a doubt doesn't conclusively state that there is no doubt is my way of thinking.' We agree with the People that the juror's response could reasonably be interpreted as a misapprehension of the different burdens. In any event, we cannot say that the prosecutor's concerns about the juror's response are so incredible that the ''discriminatory hypothesis' better fits the evidence.' *Id.* at ¶ 24 (quoting *Wilson*, ¶ 14).
>
> As for the juror's body language, we note first that defense counsel did not dispute the prosecutor's characterization of the juror's demeanor. *See People v. DeGreat*, 2015 COA 101, ¶ 34 (*cert. granted* Aug. 1, 2016). We emphasize as well the highly deferential standard of review at this step and the trial court's superior position in evaluating demeanor-based strikes. *Beauvais*, ¶ 31.
>
> Deference is due even where the trial court did not observe the juror's demeanor, the court's credibility or demeanor determination is implicit, or the determination cannot be objectively verified. *DeGreat*, ¶ 36. Because nothing in the record here either clearly refutes or contradicts the prosecutor's demeanor-based explanation, we will not second-guess the trial court's finding that the prosecutor offered a good faith explanation. *Id.* at ¶ 37.

We thus conclude that the trial court did not clearly err in denying Moses's *Batson* challenge.

(*Id.* at 24-25.)

This Court finds the resolution of Applicant's challenge a reasonable application of *Batson.* The state-court record demonstrates that the three-step procedure mandated by the Supreme Court was applied. And the prosecutor's stated reason for excusing the juror was race-neutral. Nothing in the record demonstrates—and Applicant does not establish—that the prosecutor's justification for striking the juror was pretextual. Consequently, this claim fails.

### E.  Claim Six: Exclusion of Defense Expert on Cross-Racial Identification.

Applicant's sixth claim is that the "trial court violated [his] fundamental right to present a defense afforded him by the Fourteenth Amendment by refusing to qualify his expert on cross-racial eyewitness identification[.]" (Doc. # 2 at 9.) At trial, Applicant offered James Emery as "an expert in cross-racial identification and eyewitness reliability in identification." (*Id.* at 6-7.) The only qualification Applicant identifies for Mr. Emery to opine on such matters is that he is a "cultural anthropologist." (*Id.* at 7.) Respondents argue that the Colorado Court of Appeals correctly "determined that the state district court properly exercised its discretion to exclude the defense expert as unqualified to opine on cross-racial identification." (Doc. # 24 at 35-40.)

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The Due Process Clause is violated only if the exclusion of the evidence violated a fundamental principle of justice. *Patterson v. New*

16

*York*, 432 U.S. 197, 201-02 (1977). Yet federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal habeas courts may only interfere with state evidentiary rulings when the rulings in question are "so unduly prejudicial that it renders the trial fundamentally unfair[.]" *See Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)); *see also Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (state court rulings on the admissibility of evidence are not questioned in federal habeas actions unless they "render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.") (internal quotations marks and citations omitted).

In rejecting Applicant's challenge to the exclusion of his defense expert at trial (an evidentiary ruling), the Colorado Court of Appeals recounted the proffered expert's lack of qualifications:

> The expert acknowledged that he
> - had never attended a class on cross racial identification;
> - had no certification in eyewitness identification issues;
> - had not conducted any formal studies on the subject of cross racial identification, or published the results of any informal studies;
> - had never published a peer-reviewed article on cross racial identification, or eyewitness identification generally, in any journal;
> - had never been qualified as an expert in eyewitness identification issues; and
> - had submitted 'notes' regarding his expected testimony to the prosecution that were taken verbatim from an article on the internet.

(Doc. # 9-4 at 28.) The appellate court also noted Applicant's summary assertion that Mr. Emery possessed "specialized knowledge as a cultural anthropologist in the area of cross racial identification"—the same conclusory assertion Applicant

17

makes here. (*Compare* Doc. # 9-4 at 30 *with* Doc. # 2 at 6-7.) Based on the

above-recited lack of qualifications, it was reasonable for the Colorado Court of

Appeals to find no abuse of discretion in the trial court's exclusion of Mr. Emery's

testimony. The Court does not find exclusion of the proffered expert testimony to

have been so unduly prejudicial that it rendered the trial fundamentally unfair. As

such, habeas relief is not warranted.

### F.  Claim Seven: Mistrial After Applicant Failed to Appear.

In his seventh claim, Applicant contends "[t]he trial court erred in failing to

declare a mistrial when [he] failed to appear on the final day of trial in violation of the

Due Process Clause and the Sixth Amendment to the U.S. Constitution[.]" (Doc. # 2 at

9.) Applicant alleges that the trial court proceeded "without any evidence that Mr.

Moses' absence was volitional." (*Id.* at 7.) Not so, says Respondents. They counter

that the court of appeals properly rejected this claim in finding that Applicant "waived

his right to be present at trial by voluntarily absenting himself." (Doc. # 24 at 40-43.)

In *Taylor v. United States*, 414 U.S. 17 (1973), the Supreme Court held that a

criminal defendant impliedly waived his constitutional right to be present at trial by

voluntarily absenting himself. *Id.* at 20. The criminal defendant had waived his right to

be present even though the trial court never expressly warned the that "the trial would

continue in his absence."[2] *Id.* at 19. The Supreme Court found it "wholly incredible to

suggest . . . that a defendant who flees from a courtroom in the midst of a trial—where

---

[2] In this case, Applicant was expressly warned to arrive to court on time. After Applicant arrived  late on the second day of trial, the trial judge addressed Applicant, on the record: "Mr. Moses, we do want to start on time. I don't expect you to be late again. . . You were told be a half hour before 9;00 o'clock, and now it's almost 9:30. We cannot have delays like this." (Doc. # 23, Trial. Tr. 4:6-12 (Apr. 18, 2006).)

judge, jury, witnesses and lawyers are present and ready to continue—would not know

that as a consequence the trial could continue in his absence." *Id.* at 20 (internal

quotations omitted). "A trial may continue if a defendant voluntarily absents himself

after the trial has begun." *United States v. Newman*, 733 F.2d 1395, 1401 (10th Cir.

1984); *United States v. Pawelski*, 651 F. App'x 750, 770 (10th Cir. 2016) (unpublished)

("a trial can proceed when a defendant is voluntarily absent.").

Here, Applicant makes no suggestion that his absence was not voluntary (or

somehow due to circumstances beyond his control), as the Colorado Court of Appeals

found. Moreover, Applicant cites no Supreme Court authority for the proposition that,

before proceeding with the final day of a scheduled trial, the trial court was required to

receive evidence and confirm that Applicant's absence was volitional. Accordingly, the

state court did not unreasonably apply clearly established federal law in concluding that

Applicant impliedly waived his right to be present at trial.

### G. Claim Eight: Denial of a *Telfaire* Instruction.

The whole of Applicant's eighth claim states: "The trial court violated Mr. Moses'

Constitutional right to a fair trial by refusing to tender a *Telfaire* instruction[.]" (Doc. # 2

at 9.) Respondents argue that Applicant is not entitled to habeas relief because he

"fails to provide any support whatsoever, factual or otherwise, for this claim." (Doc. # 24

at 43.) The Court agrees with Respondents.

Rules 2(c)(1) and 2(c)(2) of the Rules Governing Section 2254 Cases in the

United States District Courts require Applicant to identify the federal constitutional right

allegedly violated in each claim he asserts and to state the relevant factual allegations

in support of each asserted claim. Habeas corpus rules are more demanding than the
rules applicable to ordinary civil actions, which require only notice pleading. *See Mayle
v. Felix*, 545 U.S. 644, 655 (2005). "A prime purpose of Rule 2(c)'s demand that
habeas [petitioners] plead with particularity is to assist the district court in determining
whether the State should be ordered to 'show cause why the writ should not be
granted.'" *Id.* at 656 (quoting 28 U.S.C. § 2243). Naked allegations of constitutional
violations are not cognizable in a habeas corpus action. *See Ruark v. Gunter*, 958 F.2d
318, 319 (10th Cir. 1992) (per curiam).

Because Applicant neither identifies the federal constitutional right allegedly
violated nor the relevant factual allegations to support this claim, it is not cognizable in
this habeas corpus action. And the Court will not search the record to find support for
generalized claims of constitutional error or construct arguments for Applicant. *Gross v.
Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). Therefore, this claim will be
dismissed.

### H.  Claims Nine, Ten, and Eleven: Ineffective Assistance of Counsel.

Applicant contends in claims nine, ten, and eleven that trial counsel was
constitutionally ineffective. (Doc. # 2 at 9-10.) He specifically contends counsel: (1)
failed to call a juror from Applicant's first trial (which ended in a mistrial) who
purportedly knew an alternate suspect; (2) failed to diligently investigate the
qualifications of the proffered eyewitness expert on cross-racial identification whose
testimony was excluded; and (c) erred by waiving closing argument. For the reasons
that follow, the Colorado Court of Appeals correctly stated and applied the two-part

*Strickland* test.

It was clearly established when Applicant was convicted that a defendant in a

criminal case has a Sixth Amendment right to the effective assistance of counsel. *See*

*Strickland v. Washington*, 466 U.S. 668 (1984). To establish counsel was ineffective

Applicant must demonstrate both that counsel's performance was deficient and that

counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. If

Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of

counsel claim must be dismissed. *See id.* at 697. In general, "[j]udicial scrutiny of

counsel's performance must be highly deferential." *Id.* at 689. There is "a strong

presumption" that counsel's performance falls within the range of "reasonable

professional assistance." *Id.* It is Applicant's burden to overcome this presumption by

showing that the alleged errors were not sound strategy under the circumstances. *See*

*id.*

The challenge of demonstrating counsel was ineffective is even greater for a

state prisoner seeking federal habeas corpus review under § 2254(d). *See Harmon v.*

*Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019). "When assessing a state prisoner's

ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the

state court's determination that counsel's performance was not deficient and, further, to

the attorney's decision in how to best represent a client." *Id.* (internal quotation marks

and brackets omitted). Thus, review under § 2254(d) is doubly deferential. *See id.*

Furthermore,

> [f]ederal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under §

> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard. And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard.

*Id.* (citations and internal quotation marks omitted).

Under the prejudice prong, Applicant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). In determining whether Applicant has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Applicant. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). Now the claims.

1. *Calling the previous juror as a witness.*

As recounted above, Applicant's first trial ended in a mistrial after a juror claimed to know an alternate suspect, "Spook." Claim nine asserts that trial counsel (in the second trial) was ineffective for failing to call as a witness the "juror who purportedly knew the alternate suspect in violation of [Applicant's] Sixth Amendment rights." (Doc. # 2 at 9.) Respondents find the court of appeal's "decision on this claim is not an unreasonable application of *Strickland*." (Doc. # 24 at 48-51.)

The appellate court rejected this ineffective assistance of counsel claim because Applicant failed to demonstrate deficient performance. The court explained that

> counsel had reasonably declined to call the juror because he would be

22

> subject to damaging impeachment based on his misconduct in the first trial, which was documented by other jurors. The court also found that the juror's testimony would have been of limited probative value because, although he could confirm the existence of a person with the nickname 'Spook,' the juror had no information connecting 'Spook' to any of the crimes.

(Doc. # 9-4 at 37.) Applicant fails to demonstrate the state court's deference to counsel's strategic choice to not call the juror as a witness was an unreasonable application of *Strickland*. Therefore, habeas relief is not available.

### 2. *Failure to investigate the identification expert's qualifications.*

In claim ten, Applicant maintains that trial counsel was ineffective for failing "to diligently investigate the qualifications of the endorsed eyewitness identification expert in violation of [his] Sixth Amendment rights." (Doc. # 2 at 9-10.) Respondents submit that the Colorado Court of Appeal's "conclusion that Applicant failed to establish prejudice was, at a minimum, within AEDPA's required zone of reasonableness." (Doc. # 24 at 53.)

After assuming counsel performed deficiently, the Colorado Court of Appeals recounted the other evidence establishing Applicant's guilt:

> The prosecution linked Moses to the crimes mostly through strong circumstantial evidence — many of the witnesses provided detailed descriptions of, and then identified, the two vehicles involved in the crimes and those vehicles were registered to Moses's wife and driven by Moses; Moses was an admitted crack addict; and Moses had inconsistent and implausible explanations as to why his vehicles were connected to the purse snatchings.

(Doc. # 9-4 at 39.) As a result, the appellate court found no prejudice from counsel's deficient performance. (*Id.*) In reviewing the totality of the evidence—and not just the evidence that is helpful to Applicant—the Court finds the state court's conclusion that

the result of the proceeding would not have been different to be reasonable. *See Boyd*, 179 F.3d at 914. Thus, this claim does not establish a basis for granting habeas relief.

### 3. *Waiving closing argument.*

Applicant's eleventh, and final, claim takes issue with counsel's decision to waive closing argument. (Doc. # 2 at 10.) Applicant contends that "trial counsel offered an unavailing and woefully unconvincing explanation for waiving closing argument at trial. It was not a strategic decision and tantamount to conceding [his] guilt." (*Id.*) Respondents answer by citing *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)[3] and *Bell v. Cone*, 535 U.S. 685 (2002) for the proposition that waiving closing argument is a commonly adopted strategy that does not constitute ineffective assistance of counsel.

The Court agrees that those cases resolve this claim. In *Bell v. Cone*, the Supreme Court rejected a claim for habeas relief under § 2254 where the petitioner argued that his counsel's assistance was ineffective for waiving closing argument—a strategic decision made by defense counsel to prevent the lead prosecutor from arguing in rebuttal. *Id.* at 692, 697-98. In *Fox v. Ward*, the Tenth Circuit stated that "it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel." *Fox*, 200 F.3d at 1296. As the court went on to explain: "For counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been 'completely unreasonable, not merely wrong, so that [they] bear no

---

[3] The Colorado Court of Appeals also cited this case in rejecting Applicant's ineffective assistance claim. (Doc. # 9-4 at 41.)

relationship to a possible defense strategy.'" *Id.*

As the Colorado Court of Appeals recounted, counsel explained that his decision to waive closing argument was a strategic one: to "avoid the prosecution's emphasis of [unfavorable credit card usage] evidence by waiving argument and thereby precluding rebuttal." Like *Bell v. Cone* and *Fox v. Ward*, the Court finds that counsel's decision to waive closing argument in order to preclude the prosecutor from highlighting prejudicial evidence in rebuttal was a reasonable strategic decision. So, as with the other ineffective assistance claims, this one does not warrant habeas relief.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Applicant is not entitled to habeas relief on any of his claims. Accordingly, the Court:

ORDERS that the First Amended Verified Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 2) is **denied** and this case is **dismissed with prejudice**; and

FURTHER ORDERS that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED May 12, 2020, at Denver, Colorado.

BY THE COURT:

Christine M Arguello

_____
CHRISTINE M. ARGUELLO
United States District Judge